Humberto M. Guizar  (SBN 125769)
Kent M. Henderson   (SBN 139530)
Angel Carrazco, Jr.   (SBN 230845)
**GUIZAR, HENDERSON & CARRAZCO, L.L.P**.
18301 Irvine Blvd.
Tustin, CA 92780
Telephone No.: (714) 541-8600
Facsimile No.: (714) 541-8601
E-Mail: hguizar@ghclegal.com

Attorneys for Plaintiffs,
Teresa Dominguez and Jesus Romero Garcia

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA DOMINGUEZ, individually and as Successor in Interest of Jesse Romero, et al., <br><br>               Plaintiffs,<br>   vs.<br>CITY OF LOS ANGELES, et al,<br><br>               Defendants. | **Case No:**<br>**2:17-cv-04557-DMG-PLA**<br><br>**Hon. Dolly M. Gee**<br><br>**NOTICE OF APPEAL** |

TO THIS HONORABLE COURT, THE DEFENDANTS, AND THEIR ATTORNEYS OF RECORD:

NOTICE is hereby given that Plaintiffs TERESA DOMINGUEZ, et al., hereby appeal to the United States Court of Appeals for the Ninth Circuit, from the Judgment entered against Plaintiffs on November 19, 2018 (Doc. 209) and from the Order denying Plaintiffs' Motion for New Trial entered on April 24, 2019 (Doc. 228). Copies of said Orders are attached.

| | | |
|---|---|---|
| 1 | DATED: May 23, 2019 | GUIZAR, HENDERSON & CARRAZCO |
| 2 | | |
| 3 | | By   /s/ Humberto Guizar |
| 4 | | HUMBERTO GUIZAR<br>Attorneys for Plaintiffs,<br>Teresa Dominguez, et al. |

# REPRESENTATION STATEMENT

Immediately below is a service list for all parties to the action. (FRAP 12(b); Circuit Rule 3-2(b).)

Humberto M. Guizar, Esq., (SBN 125769) hguizar@ghclegal.com
Kent M. Henderson, Esq. (SBN 139530); hendolaw@gmail.com
Angel Carrazco, Jr. (SBN 230845); angel@carrazcolawapc.com
**GUIZAR, HENDERSON & CARRAZCO, L.L.P**.
18301 Irvine Blvd.
Tustin, CA 92780
Telephone No.: (714) 541-8600
Facsimile No.: (714) 541-8601

Attorneys for Plaintiffs,
Teresa Dominguez and Jesus Romero Garcia


Colleen R. Smith, Deputy City Attorney
200 North Main Street, 6th Floor,
City Hall East
Los Angeles, CA 90012
Tel: (213) 978-7027
Fax (213) 978-8785
E-mail: colleen.smith@lacity.org

Attorneys for Defendant,
City of Los Angeles


Laura E. Inlow, Esq.
COLLINSON, DAEHNKE, INLOW & GRECO
21515 Hawthorne Blvd., Suite 800
Torrance, CA 90503
Tel: (424) 212-7799
Fax: (424) 212-7757
E-Mail: Laura.Inlow@cdiglaw.com

Attorneys for Defendant,
Eden Medina

JS - 6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| Teresa Dominguez, et al., | CASE NUMBER |
|---|---|
| PLAINTIFFS | CV 17-4557-DMG (PLAx) |
| v. | |
| City of Los Angeles, et al., | **JUDGMENT ON THE VERDICT FOR DEFENDANTS** |
| DEFENDANTS. | |

  This action having been tried before the Court sitting with a jury, the Honorable Dolly M. Gee, District Judge, presiding; the issues having been duly tried and the jury having duly rendered its verdict.

  IT IS ORDERED AND ADJUDGED that judgment is entered in favor of Defendants; Plaintiffs take nothing; and the action is dismissed on the merits pursuant to the verdict filed on November 19, 2018.

           Clerk, U. S. District Court

Dated: <u>November 19, 2018</u>      By <u> Kane Tien      </u>
                     Deputy Clerk

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 17-4557 DMG (PLAx)** | Date | April 24, 2019 |
| Title | ***Teresa Dominguez, et al. v. City of Los Angeles, et al.*** | Page | 1 of 12 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:   IN CHAMBERS - ORDER RE PLAINTIFFS' MOTION FOR NEW TRIAL [213]**

I.
PROCEDURAL BACKGROUND

After the jury rendered a verdict in favor of Defendants on November 19, 2018 [Doc. # 209], Plaintiffs filed a Motion for New Trial. [Doc. # 213 ("MNT").]  Plaintiffs argue that three independent considerations require the Court to grant a new trial under Federal Rule of Civil Procedure 59(a):  (1) the Court improperly excluded evidence of another excessive force case ("the Gonzalez Case") involving Defendant Officer Eden Medina from the individual liability phase; (2) the Court improperly prohibited Plaintiffs from cross-examining Medina about the victim in another excessive force case, Omar Gonzalez, when Medina said "Omar" during direct examination; and (3) Plaintiffs have discovered evidence of juror bias.

The Court incorporates herein the factual background of this case as set forth in its Order on Medina's Motion for Summary Judgment.  [Doc. # 77 at 1-4.]  It will address any other facts pertinent to this Order as they arise.  The MNT is now fully briefed.  [Doc. # 222 ("Opp."), 225 ("Reply").]

Having duly considered the parties' written submissions, the Court **DENIES** the MNT.

II.
LEGAL STANDARD

Under Rule 59(a), a court may grant a new trial after a jury trial on some or all issues, and to any party, "for any reason for which a new trial has heretofore been granted in an action at law or in federal court."  Fed. R. Civ. P. 59(a).  As the Ninth Circuit has noted, the rule itself "does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 17-4557 DMG (PLAx)** | Date | April 24, 2019 |
| Title | *Teresa Dominguez, et al. v. City of Los Angeles, et al.* | Page | 2 of 12 |

specify the grounds on which a motion for new trial may be granted." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). "Rather, the court is bound by those grounds that have been historically recognized" which "include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the moving party." *Id.* (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

The Ninth Circuit has also held that "the trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id.* (internal citation, brackets, and quotation marks omitted); *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987) (judge should not grant a new trial unless "left with the definite and firm conviction that mistake has been committed."). "The district court's denial of the motion for a new trial is reversible only if the record contains no evidence in support of the verdict" or where the district court has "made a mistake of law." *Id.* (internal citation and quotation marks omitted). In deciding whether to hold a new trial, "the trial court may weigh the evidence and credibility of the witnesses, [but it] is not justified in granting a new trial merely because it might have come to a different result from that reached by the jury." *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (internal quotation marks omitted).

**III.
DISCUSSION**

A.  **The Court Properly Excluded Evidence of the Gonzalez Case from the Liability Phase**

Before trial, Defendants filed a motion *in limine* to preclude Plaintiffs from introducing evidence related to *In re Omar Gonzalez v. City of Los Angeles* ("the *Gonzalez* Case"), another excessive force case pending in Los Angeles County Superior Court that arose from a separate prior incident in which Medina, while on duty, shot and killed Omar Gonzalez. [Doc. # 153 ("MIL Order") at 14-15.] The Court granted that motion in part, reasoning that evidence of Medina's involvement in an unrelated excessive force case had negligible probative value with respect to Medina's individual liability in the present case and would create an "extreme" risk of unfair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-4557 DMG (PLAx) | Date | April 24, 2019 |
|---|---|---|---|
| Title | *Teresa Dominguez, et al. v. City of Los Angeles, et al.* | Page | 3 of 12 |

prejudice, particularly because Plaintiffs sought to introduce body-worn camera footage of Medina shooting Gonzalez. *Id.*[1]

Plaintiffs' argument that this ruling was erroneous falls flat. They first argue that "the [C]ourt found that all of the [Federal Rule of Evidence 404(b)] factors were present for admission under the *Duran* case[.]"[2] Reply at 6. It did not. The Court explained the *Duran* test for context, but reached no ruling on its effect in this case. Instead, the Court reasoned that "*[e]ven if* Plaintiffs were able to establish each of the four [*Duran*] elements, . . . Rule 403 excludes this evidence at the liability stage." MIL Order at 15 (emphasis added). Assuming, for the sake of argument, that the *Gonzalez*-related evidence was admissible before excluding it as unfairly prejudicial under Rule 403 was not a "miscarriage of justice" or "mistake of law." It is well established that otherwise admissible evidence is still subject to Rule 403 exclusion. *United States v. Cruz-Garcia*, 344 F.3d 951, 956 n.4 (9th Cir. 2003) ("[A]ll otherwise admissible evidence is nevertheless subject to 403 balancing.").

Plaintiffs also made a barebones argument before trial that the *Gonzalez* Case is "relevant for impeachment of Medina" under Rule 608(b). MIL Order at 15. The Court ruled that evidence of Medina's involvement in another excessive force case is not probative of his "character for truthfulness or untruthfulness." *See id.*; Fed. R. Evid. 608(b). Plaintiffs do not appear to contest the Court's *in limine* ruling that evidence of the events underlying the *Gonzalez* Case has no bearing on Medina's character for truthfulness. *See* MNT at 11-12. Accordingly, nothing about the Court's general exclusion of evidence related to the *Gonzalez* Case from the individual liability phase warrants a new trial.

**B.    The Court Properly Prevented Plaintiff's from Cross-Examining Medina About His Mention of the Name "Omar"**

---

[1] In a separate portion of the MIL Order, the Court ordered that the trial be bifurcated into two phases. The first would deal with Medina's individual liability, and the second (if necessary) would deal with the City's *Monell* liability stemming from Medina's actions. *Id.* at 1. While the Gonzalez-related evidence's danger of unfair prejudice outweighed its probative value during the first phase, the Court ruled that it was admissible on the issue of *Monell* liability during the second phase in certain forms. *Id.* at 16. Since the jury returned a verdict in Medina's favor, however, the second phase never took place.

[2] *Duran v. City of Maywood* sets forth four factors for determining whether "other act" evidence is admissible under Rule 404(b): "(1) there must be sufficient proof for the jury to find that the defendant committed the other act; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense charged." 221 F.3d 1127, 1132-33 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 17-4557 DMG (PLAx) | Date | April 24, 2019 |
| Title | Teresa Dominguez, et al. v. City of Los Angeles, et al. | Page | 4 of 12 |

During direct examination, Defendants' counsel asked Medina about why he decided to use his gun instead of a less deadly form of self-defense, such as a taser. Medina answered:

> At the time that I decided to use deadly force, the situation had already escalated to [] that level. My belief was that Omar posed an imminent threat of death or serious bodily injury at that moment, and using the Taser would be inappropriate for the level of force.

[Doc. # 225-3 at 73:18-74:2.] After that exchange, Plaintiffs requested a sidebar and asked permission to cross-examine Medina about the *Gonzalez* Case, despite the Court's *in limine* ruling, because Medina "opened the door" by "sa[ying] the name 'Omar.'" *Id.* at 78:1-79:4. The Court did not allow Plaintiffs to pursue that line of questioning based on Medina's inadvertent utterance of the name "Omar." *Id.* at 78:5.

Plaintiffs now argue that the Court's decision warrants a new trial because Plaintiffs should have been allowed to cross-examine Medina to establish that: (1) "Medina's explanation for shooting Jesse was a planned orchestrated script and lacked credibility," and (2) "whether Medina's decision to shoot Jesse . . . was objectively reasonable and whether his state of mind explanation was true or merely a prepared script." MNT at 12. Neither contention is convincing.

If Plaintiffs intended to cross-examine Medina about his state of mind when he uttered Omar's name, any line of questioning would have required the jury to hear a full explanation of the events underlying the *Gonzalez* Case. Such an explanation would have required Medina to admit on the stand to shooting another person while on duty. Whether or not that shooting was reasonable under the circumstances, entertaining the explanation would have risked subjecting Defendants to extreme unfair prejudice that substantially outweighed the evidence's probative value. It also would have likely spiraled into a time-consuming and immaterial trial-within-a-trial about the events that led to Gonzalez's death.

Relatedly, mentioning the name "Omar" one time did not open the door for Plaintiffs to impeach Medina's credibility. Plaintiffs cite *United States v. Tanaka*, 707 Fed. App'x 448, 449 (9th Cir. 2017), as an example of a court permitting impeachment testimony when a witness has opened the door to his own credibility. Reply at 12. But the witness in *Tanaka* "testified extensively" about certain beliefs and commitments that the cross-examining party contradicted with evidence of an activity that ran counter to those principles. *Id.* Such "extensive" testimony is a far cry from Medina mistakenly saying "Omar" instead of "Jesse" when describing his thought

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-4557 DMG (PLAx) | Date | April 24, 2019 |
|---|---|---|---|
| Title | Teresa Dominguez, et al. v. City of Los Angeles, et al. | Page | 5 of 12 |

process related to the amount of force he deemed necessary in this case. Accordingly, just like the Court's exclusion of evidence related to the *Gonzalez* Case as a whole was not a mistake of law or actionable unfairness, its decision to prevent Plaintiffs from inquiring as to "Omar's" identity or significance does not require a new trial.

### C. Plaintiffs Have Not Presented Sufficient Evidence of Juror Bias to Warrant an Evidentiary Hearing

Plaintiffs' final theory for why the Court should grant a new trial is that Juror Number 4 was biased against them.[3] MNT at 4. An "impartial trier of fact" is a "touchstone of a fair trial." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). Indeed, the Constitution guarantees an impartial jury to "both criminal and civil litigants." *Warger v. Shauers*, 135 S. Ct. 521, 528 (2014). In the Ninth Circuit, "[t]he bias or prejudice of even a single juror is enough to violate that guarantee." *United States v. Olsen*, 704 F.3d 1172, 1189 (9th Cir. 2013). Upon a sufficient showing of juror bias, the Court may order an evidentiary hearing where the party claiming bias has the opportunity to prove it. *See Pappas v. Miller,* No. 16-55191, 2018 WL 5279051, at *3 (9th Cir. Oct. 23, 2018), *as amended on denial of reh'g* (Dec. 13, 2018) ("A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances."); *Smith v. Phillips*, 455 U.S. 209, 215 (1982) ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias.").

There are three cognizable forms of juror bias. *Olsen*, 704 F.3d at 1189. The first is "actual bias, which stems from a pre-set disposition not to decide an issue impartially." *Id.* The second is "implied (or presumptive) bias, which may exist in exceptional circumstances where, for example, a prospective juror has a relationship to the crime itself or to someone involved in a trial, or has repeatedly lied about a material fact to get on the jury." *Id.* And the third is "'so-called *McDonough*-style bias, which turns on the truthfulness of a juror's responses on *voir dire*' where a truthful response 'would have provided a valid basis for a challenge for cause.'" *Id.* (citing *Fields v. Brown*, 503 F.3d 755, 766–67 (9th Cir.2007) (*en banc*) (citing *McDonough Power Equipment, Inc.*, 464 U.S. at 554–56).

---

[3] Defendants argue that Plaintiffs have not sufficiently shown that Juror Number 4 is the same person identified in the evidence Plaintiffs have submitted. The Court's records indicate, however, that Juror Number 4 and the individual that Plaintiffs identify have the same name and are likely the same person. To protect the juror's identity, the Court will refer to him only as Juror Number 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 17-4557 DMG (PLAx)** | Date | April 24, 2019 |
| Title | ***Teresa Dominguez, et al. v. City of Los Angeles, et al.*** | Page | 6 of 12 |

Plaintiffs raise all three forms of bias as potential grounds for a new trial, but support their argument in favor of each primarily with Juror Number 4's membership in two Facebook groups, his level of activity in those groups, the nature of his comments in those groups, and his potential exposure through those groups to facts about this case. Plaintiffs have also submitted evidence that Juror Number 4 maintained other social media accounts through which he posted content related to law enforcement activity.

      **1.**      **Actual Bias**

The Ninth Circuit defines actual bias as "bias in fact" or "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Olsen*, 704 F.3d at 1189. Actual bias can be established through circumstantial evidence, but courts typically find actual bias "when a prospective juror states that he cannot be impartial, or expresses a view adverse to one party's position and responds equivocally as to whether he could be fair and impartial despite that view." *Id.* This is high hurdle. "It is not required [that] jurors be totally ignorant of the facts and issues involved . . . . To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard." *Olsen*, 704 F.3d at 1191.

Juror Number 4's activity in the Facebook groups—"L.A. Police Pursuit/News" and "818 SF Valley Scanner News" —is substantial. He joined L.A. Police Pursuits/News in July 2018 and had posted 90 times in that group as of December 2018. [Doc. # 219-1 ("Myszynski Decl.") at ¶ 5.] He joined 818 SF Valley Scanner News in April 2018 and had posted 92 times in that group as of December 2018. *Id.* at ¶ 6. These posts show that Juror Number 4 has a habit of photographing and videotaping fires, airplane crashes, crime scenes, and police pursuits. *Id.* at ¶ 5. Fifteen of his posts pertain to officer-involved shootings and at least one indicates that he was "listening to [a police] scanner" while posting. *Id.* at ¶¶ 5, 6. He also kept YouTube and Google+ accounts that contain similar videos and activity.

Juror Number 4 posted a link to a news article in the L.A. Police Pursuits/News group three days before another group member posted an article entitled "Family of Man Fatally Shot by LAPD Office in Boyle Heights Releases Body Cam Video." [Doc. # 219-1 ("Exhibit 1C").] That article describes the events underlying the *Gonzalez* Case and this case, and includes the names of both decedents, Medina, and Plaintiffs' counsel. *Id.*; *see also* KTLA, *Family of Man Fatally Shot by LAPD Office in Boyle Heights Releases Body Cam Video*, November 1, 2018, available at:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 17-4557 DMG (PLAx)** | Date | April 24, 2019 |
|---|---|---|---|
| Title | ***Teresa Dominguez, et al. v. City of Los Angeles, et al.*** | Page | 7 of 12 |

https://ktla.com/2018/11/01/family-of-man-fatally-shot-by-lapd-officer-in-boyle-heights-releases-body-cam-video/.

This online activity demonstrates an interest in, even a fascination with, crime scenes, police pursuits, and natural disasters. But it does not show that Juror Number 4 had a "view adverse to [Plaintiffs'] position" or a biased state of mind that precluded him from acting impartially. Similarly, the Court cannot base a finding of actual bias on the likelihood that Juror Number 4 read the KTLA article before or during the trial. *See Crater v. Galaza,* 491 F.3d 1119, 1133 (9th Cir. 2007) (the "Supreme Court has cautioned against presuming juror bias due to familiarity with news reports") (citing *Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961) ("To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused" based on one of many "swift, widespread and diverse methods of communication," like news media, "is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.")). Indeed, the Court made many comments and asked many questions during *voir dire* designed to impress upon prospective jurors the need to be fair and impartial. At no time during the *voir dire* process did Juror Number 4 express any hesitation about his ability to be fair and impartial.

### 2. Implied Bias

Juror Number 4's blogging activities are also insufficient to show implied bias. Courts may only presume implied bias "as a matter of law" in two types of "extreme" or "extraordinary" circumstances. *Olsen*, 704 F.3d at 1191. The first is where "the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Id.* The second is "where repeated lies in *voir dire* imply that the juror concealed material facts in order to secure a spot on the particular jury." *Id.*; *see also Warger v. Shauers*, 135 S. Ct. 521, 528–29 (2014) ("[W]e have made clear that *voir dire* can be an essential means of protecting [the] right" to an impartial jury.). There is no evidence that Juror Number 4 personally knew any party or lawyer involved in the trial or had any other individual relationship to the case.

Plaintiffs argue that Juror Number 4's failure to answer certain questions during *voir dire* amounted to implied bias, but those arguments are more appropriate for the third type of bias, discussed below. The types of "repeated lies" necessary for a finding of implied bias rise above the mere failure to answer *voir dire* questions. For a juror to be characterized as a "repeated liar," he must "engage[] in a pattern of misleading statements" or outright lies to the court. *See Dyer v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 17-4557 DMG (PLAx)** | Date | April 24, 2019 |
|---|---|---|---|
| Title | ***Teresa Dominguez, et al. v. City of Los Angeles, et al.*** | Page | 8 of 12 |

*Calderon*, 151 F.3d 970, 982 (9th Cir. 1998) (describing a juror who, when asked directly, lied about killing her brother in a manner similar to the way the decedent died in the case at issue, and also "failed to disclose many other facts that would have jeopardized her chances of serving on [the] jury"); *Green v. White*, 232 F.3d 671, 677–78 (9th Cir. 2000) ("Adams lied twice to get a seat on the jury; when asked about these lies, he provided misleading, contradictory, and outright false answers."). Plaintiffs have not shown that Juror Number 4 made any such affirmative, and demonstrably false, statements during *voir dire*.

### 3. *McDonough* Bias

*McDonough* bias occurs when a "juror fail[s] to answer honestly a material question on *voir dire*, and . . . a correct response would have provided a valid basis for a challenge for cause."[4] *Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007). During *voir* dire, the Court asked all prospective jurors a number of questions. Plaintiffs argue that Juror Number 4 failed to answer several material questions to which he should have responded. Defendants do not dispute that Juror Number 4 failed to respond to the questions that Plaintiffs identify—they argue only that such failure does not amount to actionable bias. The Court will reproduce each question in turn and then discuss the implications of Juror Number 4's failure to respond.

> **i.** **"Do any of you belong to any organization whose mission is to monitor or critique the work of law enforcement?"** [Doc. # 225-2, Ex. 2B at 58:16-18.]

Plaintiffs argue that Juror Number 4 failed to honestly answer this question because he belonged to two Facebook groups that "monitor" police activity. MNT at 2. This argument, at bottom, is premised on the difference in the possible meanings of the word "monitor." The Court's intention in asking the question, as evidenced by the proximity of "monitor" to "critique," was to discover if any potential juror was affiliated with an organization that investigates, scrutinizes, or engages in oversight of law enforcement. Plaintiffs have interpreted the question to encompass organizations that simply observe and catalogue law enforcement activity. *See id*. at 2-3.

---

[4] Plaintiffs argue that, if they had known about certain information, they would have exercised a peremptory challenge. But they cite no authority for the proposition that courts may find *McDonough* bias when a party represents they would have exercised a peremptory challenge. Instead, binding Ninth Circuit authority instructs that *McDonough* bias exists only when "a correct response would have provided a valid basis for a challenge *for cause*." *Fields*, 503 F.3d at 767 (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 17-4557 DMG (PLAx)** | Date | April 24, 2019 |
| Title | ***Teresa Dominguez, et al. v. City of Los Angeles, et al.*** | Page | 9 of 12 |

      The ambiguity as to the meaning of the word "monitor" is ultimately unimportant. If Juror Number 4 understood the question to refer to oversight-type groups, then his failure to respond was not dishonest because it is not disputed that two Facebook groups he belongs to are not groups that oversee, scrutinize, or critique law enforcement activity. As discussed below, Plaintiffs' position is that the Facebook groups were affirmatively *pro* law enforcement. On the other hand, if Juror Number 4 understood the question to mean what Plaintiffs argue it meant, his silence in the face of the Court's question is "not fatal" because it "does not bespeak a lack of impartiality." *Fields*, 503 F.3d at 767 (quoting *Dyer*, 151 F.3d at 973). The Court is not convinced that belonging to an organization that observes and documents in a public forum law enforcement-related events is evidence of such impartiality that mandates a for-cause challenge. *See United States v. Mendoza*, 157 F.3d 730, 734 (9th Cir. 1998) (quoting and analyzing *United States v. Salamone*, 800 F.2d 1216 (3d Cir. 1986), which held that the trial court abused its discretion for dismissing all jurors with affiliations with the NRA in a firearms-related case without first asking them whether they would be able to faithfully apply the law despite their affiliation). Moreover, courts recognize that jurors are laypersons and afford them significant leeway in bias determinations when their failure to answer a question completely or correctly may have been the result of the juror's lack of "expert[ise] in English usage" or "uncertain[ty] as to the meaning of terms which are relatively easily understood by lawyers and judges." *Fields*, 503 F.3d at 767 (quoting *McDonough Power Equipment*, 464 U.S. at 555). Juror Number 4's failure to respond to this question is, therefore, not a basis for finding *McDonough* bias.

      ii.    **"Do any of you have any special knowledge or expertise with respect to the law or procedures relating to the use of force by law enforcement personnel?"** [Doc. # 225-2, Ex. 2B at 58:5-8.]

      There is no evidence that Juror Number 4 acted dishonestly by failing to respond to this question. Plaintiffs argue that the LA Police Pursuits/News Facebook group provided its members with certain LAPD response codes and scanner codes so they could be informed while listening to police scanner activity. Reply at 3-4. Assuming Juror Number 4 accessed and learned this information, however, that knowledge falls short of "special knowledge or expertise with respect to the law or procedures *relating to the use of force* by law enforcement personnel." Plaintiffs point to no evidence that Juror Number 4 knew anything about the law or procedures related to police use of force besides his access to the scanner codes "that determine the levels of force that may be used in responding to a call." Reply at 4. That type of information was immaterial in this case. And his potential knowledge of a certain police scanner code does not make his failure to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | **CV 17-4557 DMG (PLAx)** | | Date | April 24, 2019 |
| Title | ***Teresa Dominguez, et al. v. City of Los Angeles, et al.*** | | Page | 10 of 12 |

answer the Court's question "dishonest." Accordingly, there is no basis for finding *McDonough* bias with respect to the juror's failure to respond to this question.

> iii.   **"Have any of you ever belonged to any group which is organized to support or advocate for law enforcement, crime prevention, or victims' rights?"** [Doc. # 225-2, Ex. 2B at 58:13-15.]

The two Facebook groups to which Juror Number 4 belongs are undoubtedly "groups." Plaintiffs argue that they were organized to support law enforcement and Defendants argue they were organized merely to observe and comment on law enforcement activity. Opp. at 9; Reply at 4-5. Defendants' characterization appears to be more accurate. The vast majority of the posts Plaintiffs submitted reflect Facebook users, including Juror Number 4, simply sharing articles or footage of law enforcement activity or natural disasters without any significant commentary or opinion. *See* [Doc. # 291-1.] Juror Number 4, however, authored one post "thank[ing]" the LAPD for their "work . . . keeping us safe." *Id.* at 25. Plaintiffs also argue that he authored another blurb that includes a photo of confiscated firearms and a caption thanking LAPD for their work and stating that "[w]e are ending the year the same way we started it—by working hard to make our streets safer." [Doc. # 225-4.] According to Plaintiffs, the implication is that he believes the "we" in that sentence includes both himself and law enforcement personnel, which indicates that he sees himself as part of the law enforcement community. Based on the redacted document Plaintiffs attached, however, it appears that Juror Number 4 did not author the caption himself, but simply shared the photo in a form that already included a caption message written by an account called "LAPD Headquarters." *See id.*

Even assuming Juror Number 4 wrote and shared the second post, neither Facebook group appears to be "organized to support or advocate for law enforcement." It appears instead that the groups are both forums for users to share information and footage related to police activity and other ongoing crimes or emergencies. That is not the same as a group organized to express "pro-police" opinions or sentiment. In other words, the groups appear more journalistic than editorial. Plaintiffs' argument that Juror Number 4's status as an administrator of one of the groups, combined with his "thank you" post," transformed the group as a whole into a law enforcement support group also fails. But, by Plaintiffs' own admission, Juror Number 4 did not become an administrator until after the trial, so if the group became a law enforcement support group when he became an administrator, his failure to respond to the Court's question during *voir dire* was not dishonest at the time the Court asked it. [Doc. # 225-4, Ex. 11B.] The Court concludes, therefore, that his failure to answer this question was not dishonest.

| | | |
|---|---|---|
| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 17-4557 DMG (PLAx) | Date | April 24, 2019 |
| Title | Teresa Dominguez, et al. v. City of Los Angeles, et al. | Page | 11 of 12 |

    **iv.**    **"Do any of you think that you know anything about this case or have you read or heard anything about it, other than what you have heard so far here in open court?"** [Doc. # 225-2, Ex. 2B at 39:19-22.]

Juror Number 4's failure to respond to this question is Plaintiffs' most compelling basis for a finding of dishonesty. As described above, another member of the L.A. Police Pursuits/News group posted a detailed news article about the Gonzalez and Romero shootings 11 days before the trial in this case began. That article mentioned Medina by name and explained that the two shootings occurred less than two weeks apart. Given Juror Number 4's high level of activity in the group during that timeframe—he posted around 50 times between October 1, 2018 and November 12, 2018—there is a colorable inference to be drawn that he saw the post, which included a photo of Medina, or clicked on the link and read the article in full. If he had read the article, not responding to the Court's question would amount to a failure to answer a material question honestly.

Plaintiffs have not shown, however, that Juror Number 4's viewing of the article would have supplied grounds for a valid challenge for cause. As noted above, the "Supreme Court has cautioned against presuming juror bias due to familiarity with news reports." *Crater,* 491 F.3d at 1133. Courts do not require "that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication . . . scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case." *Id.* (quoting *Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961)). And the Ninth Circuit has expressed doubt that the "mere fact that [a juror] learned about the case from the media and formed prior impressions about it" is sufficient for a finding of bias. *Olsen*, 704 F.3d at 1189.

Moreover, the Court's review of the article in question indicates that, even if Juror Number 4 had read it, it most likely would have resulted in bias *in favor of* Plaintiffs, rather than against them. The article clearly explains the events of the *Gonzalez* Case, evidence of which the Court excluded from the individual liability phase for fear that it would result in unfair prejudice to Defendants, and connects Medina to it. *See* KTLA, *Family of Man Fatally Shot by LAPD Office in Boyle Heights Releases Body Cam Video*, November 1, 2018, available at: https://ktla.com/2018/11/01/family-of-man-fatally-shot-by-lapd-officer-in-boyle-heights-releases-body-cam-video/. It also contains a video panel that plays a portion of Medina's body worn video footage from the Gonzalez shooting, which the Court excluded due to the images' potential to unfairly inflame jurors against Defendants. *Id.* Plaintiffs' counsel is also quoted in the article implying that Medina "tamper[ed]" with the Gonzalez crime scene and that "LAPD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 17-4557 DMG (PLAx) | Date | April 24, 2019 |
|---|---|---|---|
| Title | *Teresa Dominguez, et al. v. City of Los Angeles, et al.* | Page | 12 of 12 |

. . . didn't want anyone to see" the footage. *Id.* Indeed, the article does not appear to include any information that likely would have biased Juror Number 4 *against* Plaintiffs and Plaintiffs identify none. As a result, even if Juror Number 4 read the article and intentionally failed to answer the Court's question about prior knowledge, Plaintiffs have not shown that a *McDonough* bias hearing is necessary.

## IV.
## CONCLUSION

The Court recognizes that the potential that a juror may have been exposed to information about the case beyond what the parties presented to him at trial is cause for concern. But precedent is clear that the interest in a jury verdict's finality outweighs such concerns unless the party moving for a new trial is able to show more evidence of bias than Plaintiffs have shown here. As the Supreme Court explained, "[a] trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination." *McDonough Power Equip., Inc.*, 464 U.S. at 555. Plaintiffs' MNT is respectfully **DENIED**.

**IT IS SO ORDERED.**